# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **VINCENT BREHM,** | CASE NO. 8:10CV64 |
| Plaintiff, | |
| v. | ORDER |
| **DANA TROWBRIDGE, Mayor of the City of David City, individually and his official capacity as mayor of the City of David City, and the CITY OF DAVID CITY,** | |
| Defendants. | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 19). For the reasons discussed below, the Motion will be denied.

## SUMMARY OF FACTS

Plaintiff Vincent Brehm ("Brehm") brought this action against the City of David City, Nebraska (the "City"), and its Mayor, Dana "Skip" Trowbridge ("Trowbridge"), alleging that the Defendants terminated his employment in violation of his rights of free speech and due process.

Brehm was employed by the City as a police officer for approximately eleven years, from December 1998 to December 2009. He had no formal employment contract. It was the City's practice for the Mayor to determine whether employees such as police officers should be reappointed for one-year terms, and to make such recommendations to the City Council for approval each December. Brehm was never informed of this "reappointment" practice, however, and understood his position to be a permanent one in which he would serve until his retirement.[1]

---

[1] Brehm states that he "never received any notice at any time of having been reappointed." (Filing No. 27, ¶ 3.) Defendants dispute this claim in their Reply Brief (Filing No. 32, p. 2), but simply refer the Court to the Trowbridge Affidavit (Filing No. 20) ¶ 6, in

In July 2009, Brehm attended a public forum and expressed certain views on matters of public concern.  Later, Brehm received word through the City's police chief that Trowbridge was not happy with Brehm's statements.[2]  Also in 2009, Brehm and members of his family signed a recall petition to remove Trowbridge from office, and Brehm's wife and children were actively involved in the recall effort.  In October 2009, the recall failed.

On December 2, 2009, Mike Rogers, a City Council member, told Trowbridge that a dispatcher told Rogers that Brehm made a gesture mimicking the cocking of a bolt action rifle and said, "One down, one to go."  Trowbridge interpreted the alleged comment to be a reference to the recent resignation of the City administrator, and a "threat" against Trowbridge.  Rogers also told Trowbridge that the dispatcher told Rogers that Brehm told the dispatcher that Brehm was aware of Trowbridge's visit to a grocery store while Brehm was on duty.  Trowbridge interpreted this alleged comment to indicate that Brehm was keeping track of Trowbridge's whereabouts.

In December 2009, Trowbridge did not reappoint Brehm to serve another year in the City police force, and the City Council confirmed the Mayor's decision.  Brehm requested a hearing before the City Council after finding out that he would not be reappointed, but the

---

which Trowbridge states that each December since he became Mayor he made reappointment decisions which were submitted to the City Council for approval.  No evidence before the Court indicates that Brehm was ever notified that his employment was considered by the City to be on a year-to-year basis, subject to discretionary reappointment.

[2]Defendants move to strike paragraphs 4 and 8 of Brehm's Affidavit, Filing No. 27, asserting that these statements are hearsay to the extent that they are offered to prove Trowbridge's state of mind.  To the extent that the statements are offered to prove Trowbridge's state of mind, the motion to strike (Filing No. 31) will be granted, and the statements given no weight for purposes of the Court's analysis of the pending Motion for Summary Judgment.  Similarly, statements in paragraphs 10 and 13 of Trowbridge's Affidavit (Filing No. 20) will be given no weight to the extent that they are offered to prove the truth of the matters asserted by the "dispatcher" and by Mike Rogers.

City Council declined to hold a hearing, because the Council did not view his situation as a termination, but simply a decision not to reappoint. On January 4, 2010, the City's attorney, James Egr, wrote to Brehm's attorney, denying Brehm's request for a hearing, asserting that "Mr. Brehm WAS NOT REAPPOINTED; HE WAS NOT TERMINATED."

The City's Municipal Code includes the following article regarding "Appointed Officials":

> (A) The Mayor, by and with the consent of the City Council, may appoint a City Administrator, City Clerk, Deputy City Clerk, City Treasurer, City Attorney, City Physician, City Police Chief, City Fire Chief, City Street Commissioner, City Electric Supervisor, City Electric Plant Supervisor, City Water/Sewer Supervisor, City Zoning Administrator, City Engineer, City Park and Auditorium Superintendent, who shall hold their officers for one (1) year. The Mayor, with the consent of the City Council, shall appoint such number of regular police officers as may be necessary. The City Council may establish and provide for the appointment of members of a law enforcement reserve force as provided by law. *(Neb. RS 17-107)*
>
> (B) All police officers and other appointed officials may be removed at any time by the Mayor. A police officer and all other appointed officials, including the chief of police, may appeal such removal or other disciplinary action to the city council. After a hearing, the city council may uphold, reverse, or modify the removal or disciplinary action. *(Neb. RS 17-107)*

Neb. Rev. Stat. § 17-107 (Reissue 2007), applicable to cities of the second class,[3] provides in relevant part:

> (1) . . . . The mayor, with the consent of the council, may appoint such officers as shall be required by ordinance or otherwise required by law. Such officer may be removed from office by the mayor. The mayor, by and with the consent of the council, shall appoint such a number of regular police officers as may be necessary. All police officers appointed by the mayor and council shall be removable at any time by the mayor. A police officer, including the chief of police, may appeal such removal or other disciplinary

---

[3] Those with populations of more than eight hundred and not more than five thousand. Neb. Rev. Stat. § 17-101. The Court takes judicial notice of the fact that David City is a city of the second class under Nebraska law.

action to the city council. After a hearing, the city council may uphold, reverse, or modify the removal or disciplinary action.

(2) The city council shall by ordinance adopt rules and regulations governing the removal or discipline of any police officer, including the chief of police. The ordinance shall include a procedure for making application for an appeal, specifications on the period of time within which such application shall be made, and provisions on the manner in which the appeals hearing shall be conducted. Both the police officer and the individual imposing the disciplinary action shall have the right at the hearing to be heard and to present evidence to the city council for its consideration. Not later than thirty days following the adjournment of the meeting at which the hearing was held, the city council shall vote to uphold, reverse, or modify the removal or disciplinary action. The failure of the city council to act within thirty days or the failure of a majority of the elected council members to vote to reverse or modify the removal or disciplinary action shall be construed as a vote to uphold the removal or disciplinary action. The decision of the city council shall be based upon its determination that, under the facts and evidence presented at the hearing, the challenged removal or disciplinary action was necessary for the proper management and the effective operation of the police department in the performance of its duties under the statutes of the State of Nebraska. Nothing in this section shall be construed to prevent the preemptory suspension or immediate removal from duty of an officer by the appropriate authority, pending the hearing authorized by this section, in cases of gross misconduct, neglect of duty, or disobedience of orders.

Brehm seeks back pay, reinstatement or front pay, attorney fees, compensatory damages for mental and emotional distress, and other relief.

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987)). "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a

proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.*  Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "a genuine issue of material fact such that [the] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law . . . .'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)).  Thus, a "genuine issue" is more than "some metaphysical doubt as to the material facts," *Nitro Distrib.*, 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Bloom*, 440 F.3d at 1029-30 (emphasis and quotation marks removed) (quoting *Anderson*, 477 U.S. 247-48).

In other words, "[o]n a motion for summary judgment, [the] facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to

5

those facts." *Ricci v. DeStefano*, 557 U.S. __, 129 S.Ct. 2658, 2677 (2009). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also Scott v. Harris,* 550 U.S. 372 (2007).

## DISCUSSION

### I. First Amendment Freedom of Expression

Brehm's efforts to recall Trowbridge as Mayor and the comments Brehm made in a public forum are protected speech under the First Amendment. *See McIntyre v. Ohio Elections Commission,* 514 U.S. 334, 346-47 (1995) (political speech, in particular the advocacy for or against a political office-holder, is at the core of the protection afforded by the First Amendment). Because Brehm's speech was protected, and because he alleges that this speech was the reason for his removal from his position as a City police officer, he has presented a First Amendment retaliation claim. *See Pickering v. Board of Education,* 391 U.S. 563, 574 (1969) (a public employee's exercise of First Amendment rights "may not furnish the basis for his dismissal from public employment.").

Trowbridge asserts that he declined to reappoint Brehm to the police force due to statements and/or gestures Brehm allegedly made to a dispatcher, relayed through others to Trowbridge, that Trowbridge construed to be threatening. While threatening speech is not protected by the First Amendment, genuine issues of material fact remain for the jury including, but not limited to, whether Trowbridge's decision to terminate or "not reappoint" Brehm was actually motivated by Brehm's protected speech. *See Bailey v. Dept. of*

6

*Elementary and Secondary Education,* 451 F.3d 514, 517 (8th Cir. 2006) (whether a plaintiff's protected speech motivated a defendant's decision to terminate plaintiff's employment is a question for the jury).

## II. Due Process

Brehm claims that he had a property interest in his job, which was denied to him without due process, in violation of the Fourteenth Amendment. The Defendants contend that Brehm had no such property interest, because he was appointed to his position for one-year terms, and simply was not re-appointed at the end of a term.

This Court does not agree with the Defendants' interpretation of the City's Municipal Code and the corresponding Nebraska statute. Nothing in the Code or corresponding statute indicates that police officers employed by cities of the second class are subject to annual, discretionary re-appointment, or that they have no right to due process in connection with the termination of their employment. To the contrary, this Court's reading of the Code and corresponding statute indicates that post-termination due process is mandated under both the Code and the statute.

Evidence before the Court at this time indicates that Brehm understood his job to be a permanent one, and that he was never told that he was subject to annual reappointment. Although Trowbridge asserts that he submitted reappointment recommendations to the City Council for all City police officers annually during his tenure as Mayor, there is no evidence that Trowbridge served as Mayor throughout Brehm's tenure as a City police officer or that Brehm was *ever* notified of any such reappointment process. Brehm's lack of a written employment contract does not defeat his claim that

non-renewal of his employment constituted a deprivation of a property interest.  *See Perry v. Sinderman,* 408 U.S. 593, 601 (1972) (property interest may be established if, "rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit" existed).

Accordingly, the Defendants are not entitled to summary judgment in their favor on Brehm's due process claim, nor on his First Amendment claim.

IT IS ORDERED:

1. The Defendants' Motion to Strike (Filing No. 31) is granted to the extent that statements in the Affidavit of Vincent Brehm, Filing No. 27, paragraphs 4 and 8, are not given any weight to the extent that they purport to represent the state of mind of Defendant Trowbridge; and

2. The Defendants' Motion for Summary Judgment (Filing No. 19) is denied.

DATED this 17th day of August, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge